JACOBY HIRSCH, Appellant and Respondent, v. SCHWARTZ & COHN, INC., et al., Respondents, and HIGHWAY IMPROVEMENT AND REPAIR COMPANY, INC., Appellant, Impleaded with Others.

8

(Argued February 18, 1931; decided March 24, 1931.)

*Harry G. Anderson* for plaintiff, appellant and respond-
ent. That part of the judgment in favor of the defend-
ants-respondents is contrary to law and against the
weight of the evidence. (*Clark* v. *Thayer*, 205 App. Div.

206; 237 N. Y. 544; *Bolton* v. *Madsen*, 205 App. Div. 180; *Lowell* v. *Williams*, 228 N. Y. 592; Thompson on Negligence [2d ed.], §§ 2, 446.) Defendant-appellant was properly held liable to the plaintiff for the injuries sustained. (*Mullins* v. *Siegel Cooper Co.*, 183 N. Y. 129; *Paltey* v. *Egan*, 200 N. Y. 83; *Bergen* v. *Morton Amusement Co.*, 178 App. Div. 400; *City of Buffalo* v. *Holloway*, 7 N. Y. 493; *Brusso* v. *City of Buffalo*, 90 N. Y. 679; *McMahon* v. *Second Ave. R. R. Co.*, 75 N. Y. 231; *Johnson* v. *Friel*, 50 N. Y. 679; *Parsan* v. *Johnson*, 208 N. Y. 337; *Phœnix Bridge Co.* v. *Creem*, 102 App. Div. 354; 185 N. Y. 580; *Junkermann* v. *Tilyou Realty Co.*, 213 N. Y. 404; *Barrett* v. *Lake Ontario Imp. Co.*, 174 N. Y. 310; *Gardner* v. *Frederick*, 25 App. Div. 521; 163 N. Y. 568; *Hughes* v. *Harbor Assn.*, 131 App. Div. 185; *Ya Deau* v. *Gasparrini*, 170 N. Y. Supp. 1011.)

*George J. Stacy* and *James J. Mahoney* for defendant-appellant. There was no large, deep hole or excavation or dangerous condition left unguarded by defendant-appellant at the place of the accident. (*Beebe* v. *Schenectady Ry. Co.*, 164 App. Div. 774; *Whalen* v. *Citizens Gas Light Co.*, 151 N. Y. 70.)

*Everett F. Warrington* for defendants-respondents. The verdict in favor of defendants-respondents is supported by the evidence. (*Mieuli* v. *New York & Queens County Ry. Co.*, 136 App. Div. 373; *Grogan* v. *Brooklyn Heights R. R. Co.*, 107 App. Div. 254; *Slomka* v. *Nassau El. R. R. Co.*, 191 App. Div. 727; *Puczko* v. *Kovacs*, 129 App. Div. 889; *Larsen* v. *Lackawanna*, 146 App. Div. 238; *New York Evening Journal* v. *Simpson Advertising Agency*, 56 Misc. Rep. 347; *Cooper* v. *Fleischman*, 85 Misc. Rep. 1; *Viele* v. *Mack*, 150 App. Div. 839; *McDonald* v. *Metropolitan St. Ry. Co.*, 167 N. Y. 66; *Berkowitz* v. *Consolidated Gas Co.*, 134 App. Div. 389; *Meyers* v. *Hines*, 199 App. Div. 594.)

CRANE, J.   Louis Krolick was the driver of a truck for Schwartz & Cohn, Inc., a domestic corporation.   On the 29th day of September, 1925, he was driving the truck westerly through Vernon avenue, in the borough of Brooklyn, and over and across Sumner avenue, through which ran a street railroad.   On the seat with him was a young boy named Lester Hirsch, who had been injured. The driver was taking him to a drug store.   The boy was stretched out on the seat of the truck, while his father, the plaintiff in this case, Jacoby Hirsch, sat in the space between the dashboard and the seat, with his back toward the dashboard.

The Brooklyn, Queens County and Suburban Railroad Company had raised its tracks on Sumner avenue some six or seven inches to conform to a new grade, and had constructed on the farther, or west, side a ramp or inclined plane, running from the top of the rail to the level of the street.   From the top of the rail this ramp extended on an incline out about two feet, where it reached the surface of the street.   It was a gradual descent from the top to the surface of the highway.   The width of this construction was sufficient for the passing of one truck — the narrowest estimate of its width is given as eight feet.

As Krolick was driving the truck over the tracks on Sumner avenue, the front wheel slipped off the edge of the ramp, giving the truck such a jar as to throw the plaintiff, Jacoby Hirsch, to the street, causing him the injuries for which he has brought this suit.

The Brooklyn City Railroad Company, having been made a party, the action against it was dismissed at the opening of the trial, on the consent of plaintiff's counsel. The jury found a verdict in favor of the defendants Schwartz & Cohn, Inc., and Louis Krolick, the owner and driver of the truck, and gave a verdict of $15,000 against the Highway Improvement and Repair Company, Inc., the contractor, which had undertaken with the city of New York to asphalt Sumner avenue between Broadway and

Fulton street. The action was separated by order of the court, resulting in two separate judgments in the trial court. Both judgments have been affirmed.

The judgment as to Schwartz & Cohn, Inc., and Louis Krolick, having been unanimously affirmed, the Appellate Division allowed an appeal to this court. This judgment must be affirmed. There are no questions of law in the case, as against these defendants, for us to review. The plaintiff having failed to move for the direction of a verdict at the end of the case, he is in the same position as a defendant who fails to make a similar motion; he concedes there is a question of fact to go to the jury; or, to state the legal situation with precision, there is no exception by the plaintiff at the end of the case to a ruling of the court which raises the question of law whether there should have been a recovery as matter of law. As to the judgment against the Highway Improvement and Repair Company, Inc., there being a dissent in the Appellate Division, the case is here as a matter of right, and after a review of the evidence, we are of the opinion that the judgment must be reversed.

On the 27th of March, 1925, the Highway Improvement and Repair Company, Inc., made a contract with the city of New York for regulating and repaving with permanent asphalt pavement on a six-inch concrete foundation, the roadway of Sumner avenue, from Broadway to Fulton street. This is a distance of about thirty blocks, or a little over a mile. As the grade of the street was to be raised, the Brooklyn, Queens County and Suburban Railroad Company was granted permission on the 13th day of June, 1925, by the Superintendent of Highways, to open the surface of Sumner avenue for the purpose of reconstructing its tracks; and in July it raised its rails at Vernon avenue seven inches, and constructed the ramp over the two feet to the west of the westerly rail. Every street surface railroad corporation is obliged to keep in permanent repair that portion of the street between the

rails of its tracks and two feet in width outside of its tracks (Railroad Law; Cons. Laws, ch. 49, § 178). The ramp, constructed of dirt and cement, remained from July until November of the same year, when the Highway Improvement and Repair Company, Inc., removed it in order to asphalt the surface of the street level with the rails. The accident happened, as before stated, on the 29th day of September, up to which time the repair company had not yet reached, in the progress of its asphalt work, the westerly side of Sumner avenue at Vernon avenue. The easterly side of Sumner avenue, and the space between the rails and the tracks at this point, had been asphalted level with the rails, but on the westerly side the surface of Sumner avenue was the same as it always had been; the old asphalt was still there in the same condition it was in at the time the contract was made with the city in March of 1925. This old surface of the street on the westerly side was from four to seven inches below the top of the westerly rail, or the new asphalted street to the east of the most westerly rail. The only work going on in the latter part of September on the westerly side at this intersection was the resetting of the curbstones for the sidewalk. This point at the intersection of Vernon avenue and Sumner avenue was reasphalted in November, or a month or more after the date of the accident.

As before stated, the ramp or incline, descending from four to seven inches from the rail to the old surface of Sumner avenue, was constructed and maintained during all of this time by the railroad company. It covered the two feet outside the westerly rail. The city of New York and the borough of Brooklyn permitted the street to be open for use. If there were anything dangerous about the construction, it remained with the implied consent of the city. The Highway Improvement and Repair Company, Inc., did not create the danger, if any, nor maintain it. The utmost negligence which can be claimed by the

plaintiff is that the company was under duty to guard this ramp, or to enlarge, or make it safe. We can find no such duty arising out of the nature or progress of the work, nor in the contract with the city. When the contractor agreed with the city to reasphalt this mile of street, and undertook the work, it did not immediately become responsible for every previous defect existing in the highway; it was under a duty regarding its own work in the course of construction, but it assumed no obligation for the work of others or for holes or other obstructions in the street at points where it was not working. The city remained under its obligation to travelers to maintain the streets and highways in a reasonably safe condition, and the contractor had shared this duty only to the extent expressed in its contract. Subdivisions (T) and (U) of the mutual agreements, as contained on page 14 of the contract, are referred to by the plaintiff as creating a liability for this accident. They read as follows:

" (T) The Contractor will observe the law and all ordinances of The City in relation to obstructing the streets, keeping open passageways and protecting the same where they are exposed and would be dangerous to the public travel, and such passageways, if across excavation or concrete, shall be planked or bridged by the Contractor, and he will also provide suitable means for passengers to get on or off street cars on the line of work during the construction period, as may be required, at his own expense.

" (U) During the performance of the work herein set forth, the Contractor shall place proper guards upon and around the same for the prevention of accidents, furnish, erect and maintain suitable detour and other signs controlling and directing traffic, and at night will put up and keep suitable and sufficient lights, and he will indemnify and save harmless The City against and from all suits and actions of every name and description brought against it, and all costs and damages to which

it may be put on account or by reason of any injury or alleged injury to the person or property of another resulting from negligence or carelessness in the performance of the work, or in guarding the same, or from any improper materials used in its prosecution, or by or on account of any act or omission of the Contractor, his employees, agents, or subcontractors; and that the whole or so much of the moneys due to the Contractor, under and by virtue of this contract, as shall or may be considered necessary by the Comptroller of The City, may at its option be retained by The City until all such suits or claims for damages as aforesaid shall have been settled, and evidence to that effect furnished to the satisfaction of the Comptroller."

These clauses refer to the work done by the contractor and to the excavations made and material placed by it in the street; they have no reference to obstructions or dangers created by others or previously existing in the highway before the contractor had reached the place in the progress of its work or had assumed control of the location for repair.

We fail to find sufficient evidence of any violation of duty or of negligence by the Highway Improvement and Repair Company, Inc., and are, therefore, obliged to reverse the judgment recovered below. The judgment of the Appellate Division and that of the Trial Term against the defendant Highway Improvement and Repair Company, Inc., should be reversed, and a new trial granted, with costs to abide the event. The judgment in favor of Schwartz & Cohn, Inc., and Louis Krolick should be affirmed, with costs.

CARDOZO, Ch. J., LEHMAN, KELLOGG and O'BRIEN, JJ., concur; POUND and HUBBS, JJ., not sitting.

Judgment accordingly.