Clarence J. Henry, J.
This is an application, under article 78 of the Civil Practice Act, by three owners (hereafter referred to as the “ Petitioners ”) of real property located adjacent to or in close proximity to No. 606 Park Avenue, in the City of Rochester (hereafter referred to as the “ subject premises ”), for an order reversing, annulling and setting aside a determination of the respondent Zoning Board of Appeals of said city (hereafter referred to as the “Board”), dated July 27, 1961, which granted to 606 Park Avenue, Inc. (hereafter referred to as the “ Intervenor ”) a variance from the “ R-3 ” district restrictions applicable to the subject premises and alloAving the erection of a one-story shopping center and off-street parking.
The subject premises are located on the north side of Park Avenue, approximately midway between Barrington and Berkeley Streets, Avith a frontage of 176.25 feet and a depth of approximately 458.5 feet. To the east, toward Berkeley Street, lie, successively, a narrow right of way, a shopping center and a business block — all zoned “ B-2 ” commercial. Commencing with the subject premises “R-3” districting*— so-called “ walk-up apartment uses ” — prevails westerly to Barrington Street. Immediately adjacent to the subject premises on that side is property owned by David B. Jewett, Jr., Inc., one of the Petitioners, and the balance of the block is occupied by a row of attached houses. The Jewett property, approximately one half the depth of the subject premises, appears to have been previously granted a variance (with neighborhood approval) for commercial use as a dress shop — but only for the front portion of its land. The rear portion is open and landscaped. The other two Petitioners own property fronting on Barrington Street, the rear line of the Albright property abutting* the approximate rear half of the subject premises, which half has been generally assigned by the variance for off-street parking.
Historically, a similar application for variance to erect a shopping center was made on behalf of the subject premises by a prospective owner in April, 1959. At that time the signatures of 22 of the 28 neighborhood objectors to the instant application were presented in opposition. Joined also in such opposition was one Nathan Natapow, who appears to be the principal OAvner and authoritative voice of the shopping center just east of the subject premises, and of 606 Park Avenue, Inc., the Intervenor herein. That application Avas denied. In November, 1960 the Intervenor purchased the subject premises for a sum claimed to be, and undisputed, some $20,000 less than that offered by the previous applicant. The present application was *522 initiated by an application to the Superintendent of Buildings on June 15, 1961, following denial of which the appeal was taken to the Board of Appeals, which resulted in the determination herein attacked.
The ordinance which establishes the power of the Board in such matters is section 91-21, III, 3, as follows: “variances. Upon appeal, after due notice and hearing the Board may vary or modify the application of any of the regulations or provisions of this chapter relating to the use, construction, structural changes in, equipment or alteration of buildings and structures, or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done, when and only when there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of this chapter. Any relief granted shall be only the minimum required to effect substantial justice.”
This language is quite similar to but stronger than the language of section 179-b of the Village Law, applied in Matter of Otto v. Steinhilber (about to be quoted), and, the result of both, as the Court of Appeals has said, is that “ There has been confided to the Board a delicate jurisdiction and one easily abused ” (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280, 290 [1927]).
“ Practical difficulties ” have important application only to so-called “ area ” variances (Matter of Village of Bronxville v. Francis, 1 A D 2d 236, affd. 1 N Y 2d 839 [1956]; People ex rel. Helvetia Realty Co. v. Leo, 195 App. Div. 887, affd. 231 N. Y. 619 [1921]) and play little part in so-called “use”, or exception from zoning limitation, variances, such as was granted in the instant matter. ‘ ‘ Unnecessary hardships ’ ’, demonstrated to exist, are the foundation upon which the Board is empowered to act in granting a use variance. This leads directly to a consideration of the precedents which have defined and applied this term.
Pioneer in the field is Matter of Otto v. Steinhilber (282 N. Y. 71 [1939]) whose basic instruction has been so widely repeated that it may now be regarded as elemental and almost beyond the necessity for reiteration. Plowever, as a starting point, resort is had to the following quotation (p. 76): “ Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the *523 unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality.”
Applying these rules to the informal testimony presented to the Board it would seem that the Intervenor did not sustain the burden it carried (Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39 [1958]) of making out a case on items (2) and (3) of the Otto requirements, at least insofar as the rear, or northerly, portion of the subject premises are concerned. While there was proof that the front, or southerly portion, is flanked by commercial enterprises — an “island”, as the Board found — and that much of Park Avenue, on both sides of the street, is devoted to business use, thus providing a base for the Board’s finding that there were “unique circumstances of plight” and that a variance would not “alter the essential character of the neighborhood ”, the findings do not necessarily apply to the rear half of this deep plot,' on all three sides of which residential property abuts. At this point attention is focused upon the last sentence of the governing ordinance — a novel but strict and admonitory mandate, repeated for emphasis: “Any relief granted shall be only the minimum required to effect substantial justice ’ ’. This limitation was deemed of such significance by the adopting City Council that it caused the sentence to be printed in bold face type. It appears to have been recognized and observed by the Board when it granted the Jewett variance, above referred to, although the record herein contains no indication as to the manner in which that restrained variance was handled. Perhaps it was — as it should have been — predicated upon a finding, following proof, that the variance granted was the minimum to effect substantial justice in alleviation of the hardship. Be that as it may, there should have been proof before, and a finding by, the Board in the instant matter justifying the variance granted the Intervenor, as a minimum necessity (see Matter of Gerling v. Board of Zoning Appeals, 6 A D 2d 247, 250 [1958]). The Council, in effect, has added another item to the Otto items, which demands equal attention. Absent, there is no satisfactory indication that the granting of the variance to the entire subject premises, balanced against the interests of affected residential property owners — always a consideration (Matter of Holy Sepulchre Cemetery v. Board of Appeals of Town of Greece, 271 App. Div. 33 [1946]; Rochester Tr. Corp. v. Crowley, 205 Misc. 933 [1954]) —was not too broad, and thus unreasonable and illegal.
The foregoing defect, alone, would justify remanding this matter to the Board for further proof and finding. However, *524 there is a further, and compelling, reason for setting aside the variance herein. In defining item (1) of the Otto requirements, Judge Fboessel, in Matter of Forrest v. Evershed (7 N Y 2d 256 [1959], also rapidly reaching cited stature as a legal monument) held that lack of reasonable return was not established in the absence of proof on the part of the applicant to show (1) a diligent and bona fide effort on his part to sell the property to a conforming user; (2) the means employed to effect such a sale; (3) whether the property was advertised for sale and, if so, how; (4) whether the property had been listed for sale with brokers; (5) whether “ For Sale ” signs had been posted upon the property; (6) the terms and conditions under and by which the property was offered for sale; and (7) that the return from the property would not be reasonable “for each and every permitted use under the ordinance ” (p. 262). These items were, of course, directly concerned with and critical of the failure of proof in the Forrest case itself — and proof of all of them is not always elsewhere required — but from them a guiding principle derives; proof of diligent and bona fide efforts to devote the premises to a conforming use, or to sell them to a purchaser who can and will, is essential before hardship on the ground of unreasonable return is adequately displayed. The nature of the efforts will doubtless vary from application to application and depend in large measure upon the circumstances of the matter subjected to scrutiny, but it is clear that diligence of effort has the connotation of affirmative action (see Matter of Shaw v. Giglio, 31 Misc 2d 282 [1961]) — ordinarily on the part of the one who seeks the variance. He may rely, in part, upon a showing of the efforts of a predecessor owner or applicant to accomplish a conforming use or acquire a conforming purchaser, but it is his plight and he himself must take diligent steps to cure it under extant limitations. Particularly must this be true in the case of one who purchases realty upon which a restriction exists — and more particularly must it be true in a case where, as in the instant matter, the restriction has been earlier enforced and the present applicant participated in the enforcement as an opponent to the application. Ordinarily, one who purchases property under zoning restrictions is foreclosed from seeking a variance, for it is inferred that he paid a lower price, measured by the effect of the restriction (see Matter of Blumberg v. Feriola, 8 A D 2d 850, affd. 7 N Y 2d 852 [1959]; Matter of Clark v. Board of Zoning Appeals, 301 N. Y. 36 [1950]; Matter of Steers, Inc. v. Rembaugh, 259 App. Div. 908, affd. 284 N. Y. 621 [1940]) and it was stated during the hearing in the present matter that *525 the Intervenor had purchased the subject premises at some $20,000 less than the prospective owner-applicant in the previous variance matter had agreed to pay. Purchase of realty under zoning restriction has been widely regarded as self-inflicted hardship, and thus outside variance relief. The rule is a sharp one — perhaps too sharp to achieve substantial justice by rigid application to all matters coming within its scope. Circumstances vary and conditions can change with time. The Intervenor, however, presented no persuasive proof of changed circumstances or conditions to the Board herein. The opinions of its realty experts are based upon facts which have not materially changed since the earlier application, which he opposed. There has been some recent tendency to relax the rigidity of the self-inflicted hardship rule (see Matter of Bobrowski v. Feriola, 2 A D 2d 708 [1956]; Matter of Murphy v. Kraemer, 16 Misc 2d 374 [1958]) but even upon an assumption (unwarranted) that the circumstances and conditions surrounding the Intervenor called for such relaxation, there would still remain the necessity of showing affirmative diligence on its part to effect a conforming use before unnecessary hardship can be said to exist (Matter of Bobrowski v. Feriola, supra). It cannot, as it did here, purchase property under known restriction, hold it quiescently for some six months, and successfully apply for a variance upon a modified plan. The plan submitted to the Board by the Intervenor differs from that submitted by its predecessor applicant principally in change of the shopping center building location on the subject premises and the removal of the off-street parking from the front to the rear of the building. While this might have cured the Board’s objections to the previous application (the record of the previous proceeding was not submitted), and provided grounds for a new approach to the Board, the modified plan must be regarded as immaterial in the instant proceeding. It was still incumbent upon the Intervenor, under its peculiar circumstances, to demonstrate diligent effort on its part in accordance with the guiding principle of the Forrest case. Without such demonstration no satisfactory conclusion of unnecessary hardship on the ground of failure to yield a reasonable return from a conforming use can be reached. As the Intervenor failed in producing proof of the quality demanded by item (1) of the Otto rule, defined by the Forrest principle, the Board’s finding of unnecessary hardship through unreasonable return must be held unreasonable and illegal.
For the reasons discussed, the application to reverse, annul and set aside the determination allowing the variance is granted.